PETERS *v.* THE BANK.

(*Nashville.* December 22d, 1887.)

ADMINISTRATION OF INSOLVENT ESTATES. *Set-off.* Code, *Sections 3219, 3242, 3243, construed.*

A creditor, having several claims against an insolvent estate,—one of which was secured by the pledge of certain bonds,—sold the bonds, after his debtor's death, and satisfied the secured debt, and applied the surplus of the proceeds to his unsecured claims.

The administrator of the insolvent estate, after demand, sued the creditor for this surplus. To this suit the creditor pleaded his unsecured claims as set-offs or credits, under ⸲⸲ 3219, 3242, 3243 (M. & V.), Code.

*Held*: That the surplus proceeds of the pledged bonds were held by the creditor as trustee, and could not be applied to, or off-set by, the creditor's unsecured claims against the estate, under said sections.

Code cited : ⸲⸲ 3219, 3242, 3243 (M. & V.); ⸲⸲ 2374, 2396, 2397 (T. & S.).

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. A. G. MERRITT, Ch.

PILCHER & WEAVER for Peters.

JOHN RUHM for the Bank.

SNODGRASS, J. Complainant's intestate, Thos. Peters, pledged as collateral to secure a note for four thousand one hundred and fifty dollars, due the de-

fendant bank, ten thousand dollars in stock of the
Alabama and Tennessee Coal and Iron Company,
authorizing defendant to sell it on one day's notice.
The note fell due in the life-time of Peters, but
the stock was not sold.

Peters died in September, 1883. Complainant
administered on his estate, suggested its insolvency,
and demanded the stock, offering to pay the note.
This demand was refused, upon the ground that
defendant had sold the stock March 6th, 1884, for
six thousand dollars. The administrator then de-
manded the excess for which the stock had sold
over the amount of the note due from the intes-
tate. This was likewise refused, the defendant claim-
ing the right to retain and ' apply this excess on
another debt due it from Thos. Peters. Thereupon
this bill was filed, alleging substantially the facts
stated, and seeking a recovery of said excess.

The Chancellor decreed in complainant's favor,
and defendant appealed and assigned errors.

The defense is based upon Sections 3242, 3243,
and 3219 of the new Code. The last section pro-
vides that "the balance of accounts between the
deceased and any creditor or debtor, after allowing
any just credits or set-off, shall be taken as the
true amount due to or from the estate," and the
other two sections are as follows:

"In all suits by the executor or administrator
of any deceased person, the insolvency of whose
estate has been suggested, the defendant may plead
a set-off of whatever amount may be due him

from the testator or intestate at the time of his death." Section 3242.

"If there should be any surplus due the defendant, the Justice of the Peace or Court trying said cause shall give judgment in favor of. the defendant for said surplus, which judgment shall be filed as other claims with the administrator or Clerk of the Court for a pro rata allowance."

Under these sections it is insisted that in "all suits" by executors or administrators of insolvent estates a set-off may be had, and that it is only after an adjustment of all claims between the defendant and intestate that the "balance of accounts" would remain recoverable, and that therefore to this claim for the surplus arising under the sale the defendant may set off the debt not secured by pledge.

The sections are not properly susceptible of this construction. They were intended to effectuate an adjustment of debts and accounts actually due to and from the intestate at the time of his death. In this case there is an entirely different state of facts than that to which the sections apply. Here certain property was pledged as security for a given debt. When the debtor died the property remained as it was when pledged. It belonged to his estate, encumbered, however, with the charge put upon it by the intestate for the payment of this particular debt. The defendant did not owe the property or its value to the estate as a debtor. It occupied the position of trustee of the stock, and as such held it for the estate. The fact that it

afterward sold it, and put it in the power of the executor to treat this as a conversion or as a valid sale, and seek the surplus, did not change the relationship. If so, it would be profitable to a trustee who was also a creditor of the estate for which he held property, to wrongfully sell, and thereby convert himself into a debtor. Not having been the debtor of the estate, in the sense of the statute quoted, at the time of the death of the intestate, he could not by any act of his own bring himself into that relation, and thereby secure a preference over other creditors of the insolvent estate. The law intends an equality of distribution of the assets of such estate where no superior rights or liens are fixed by operation of law or contract in the life-time of the intestate, and this intention must be kept in view in its construction. The just exception made by the provisions quoted extends only to the protection of debtors who are also creditors, and secures to them the right to set off, as against the demands of the estate, such just demands as they had against it when the intestate died, and does not enable them to hold property pledged for one debt to secure, after that is done, the payment of another.

The decree is affirmed with cost.